# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BARBARA L., | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: SAG-18-3465 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

On November 9, 2018, Plaintiff Barbara L., who proceeds *pro se*, petitioned this Court to review an overpayment assessment by the Social Security Administration ("SSA"). ECF 1. The SSA filed a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that Plaintiff did not exhaust her administrative remedies prior to filing her complaint. ECF 9. Plaintiff opposed the motion. ECF 13. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons explained below, I will grant the SSA's Motion to Dismiss.

I. **FACTS**

The following facts are derived from Plaintiff's complaint and its attachments, and the allegations are assumed true for the purposes of this motion. Plaintiff's husband began receiving Social Security retirement benefits in June, 2011. ECF 1 ¶ 6. In accordance with emailed advice she had received from the SSA, Plaintiff applied for a spousal benefit when she turned 66 years of age, and voluntarily suspended her own retirement benefits until age 70. *Id.* ¶¶ 7-8. Plaintiff turned 70 years of age on January 21, 2016. *Id.* ¶ 9. At that point, she began receiving her

retirement benefits on her own earnings record, and notified SSA that she should no longer receive the spousal benefit. *Id.* ¶ 9. Despite Plaintiff's repeated requests that SSA stop sending her the spousal benefit, SSA continued paying her both types of benefits between January, 2016 and February, 2017. *Id.*

On March 30, 2017, SSA notified Plaintiff that it had overpaid her spousal benefits between January, 2012 and February, 2017, for a total overpayment of $27,366. *Id.* ¶ 10, Att. 8. The notice stated, in contradiction to the prior advice Plaintiff had obtained from SSA, that Plaintiff "should not have received any benefits as a spouse," since she had been entitled to collect higher benefits on her own earnings record. *Id.* ¶¶ 11-13, Att. 8. The notice advised that the overpayment amount would be withheld from Plaintiff's upcoming benefit payments, but stated, "If you request reconsideration and/or waiver within 30 days, the planned withholding of your benefit to recover the overpayment will not take place until your case is reviewed." *Id.* ¶ 15, Att. 8. Although Plaintiff filed a Request for Reconsideration on April 17, 2017, SSA immediately began to withhold Plaintiff's monthly distributions to collect the alleged overpayment. *Id.* ¶ 15.

Plaintiff visited a local SSA office to inquire why her benefits were being withheld. *Id.* ¶ 16. After originally claiming not to have a record of the Request for Reconsideration, SSA conceded that her request had been timely filed. *Id.* ¶¶ 16-17. Nevertheless, on May 3, 2017, SSA sent correspondence to Plaintiff indicating that her $2,993 monthly benefits would be withheld in full from May, 2017 through a portion of January, 2018, to recover the allegedly overpaid benefits. *Id.*, Att. 12. On November 20, 2017, SSA wrote to advise Plaintiff that she would begin receiving $2,814 each month, representing a withholding of $179 per month, until her full overpayment amount was paid off in December, 2020. *Id.* On March 15, 2018, SSA

2

again wrote to Plaintiff stating, "[w]e received your request that we review our decision," and noted that she would receive her full benefit payments from March, 2018, although an overpayment balance of $5,708 remained. *Id.* On July 10, 2018, SSA wrote and said, "[w]e received your request for an explanation," and again affirmed that Plaintiff would receive her full payments with no withholding, although a balance of $5,708 remained. *Id.*

On May 29, 2018, Plaintiff wrote to her United States Congressperson to request assistance with contesting her overpayment assessment. *Id.*, Att. 13. On September 21, 2018, Plaintiff received a new "Notice of Change in Benefits" stating, "Review of your record shows that the true amount of your overpayment is $8,692.00." *Id.*, Att. 14. The letter affirmed that Plaintiff would continue to receive her full benefits, without withholdings, and told Plaintiff that she had 60 days to ask for an appeal and review of this decision. *Id.* Shortly thereafter, SSA wrote Plaintiff's Congressperson to advise that, "A technical expert at the payment center in Chicago looked at the case and decided that the overpayment was correct." *Id.*, Att. 15. On November 9, 2018, Plaintiff filed her Complaint in this Court, without pursuing any additional administrative remedies.

Plaintiff alleges in her Complaint that, in a 2017 publication, SSA noted that the Bipartisan Budget Act of 2015 had closed a "loophole" which had "allowed some married individuals to start receiving spousal benefits at full retirement age, while letting their own retirement benefit grow by delaying it." *Id.* ¶ 14, Att. 9 (printout from https://www.ssa.gov/planners/retire.claiming.html). The SSA publication acknowledged that the rule closing the loophole applied only prospectively, not retroactively. *Id.* ¶ 14, Att. 9 ("If you voluntarily suspended benefits prior to April 30, 2016, you may remain in voluntary suspense status, and the new law will not affect you.").

3

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). While the plaintiff bears the burden of proving that a court has jurisdiction over the claim or controversy at issue, a Rule 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (quoting *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999)). In a motion to dismiss for lack of subject matter jurisdiction, the pleadings should be regarded as "mere evidence on the issue," and courts may "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. v. Unites States*, 945 F.2d 765, 768 (4th Cir. 1991)).

A plaintiff carries the burden of establishing subject matter jurisdiction. *See Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Goldsmith v. Mayor of Balt.*, 845 F.2d 61, 63-64 (4th Cir. 1988)). However, a pro se plaintiff's complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1987) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)) (quotation and citation omitted). Pro se filings, "however unskillfully pleaded, must be liberally construed." *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Where a plaintiff has failed to exhaust administrative remedies before bringing a claim, the action should be dismissed under Rule 12(b)(1). *See*

*Khoury v. Meserve*, 268 F. Supp. 2d 600, 607 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

## III. ANALYSIS

The SSA argues that this Court lacks jurisdiction over Plaintiff's appeal because she failed to exhaust her administrative remedies before filing suit, and is not therefore appealing from a final decision of the Commissioner. ECF 9. The SSA, as an agency of the United States Government, enjoys immunity from suit absent express waiver. *See F.D.I.C. v. Meyer,* 510 U.S. 471, 475 (1994). The applicable waiver of immunity in this case is found in the Social Security Act, which provides the statutory basis for Plaintiff's appeal.[1] ECF 1. That Act provides, in relevant part, that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action[.]" 42 U.S.C. § 405(g). In Plaintiff's case, no hearing was ever held. Plaintiff's Request for Reconsideration of the March 30, 2017, Notice of Change in Benefits remains pending, and Plaintiff has not filed a Request for Reconsideration of the September 21, 2018, Notice of Change in Benefits, instead opting to file her complaint in this Court.[2]

Plaintiff contends that "the actions SSA took on [Plaintiff's] claim for reimbursement constituted a 'final decision . . . made after a hearing,'" while also acknowledging that Plaintiff has only received initial overpayment determinations, and has filed one petition for reconsideration which remains unresolved. ECF 13 at 6. The term "final decision" is undefined

---

[1] While Plaintiff's complaint also makes a passing reference to the Administrative Procedure Act, 5 U.S.C. § 706, that Act does not provide an independent basis for subject matter jurisdiction for Social Security appeals. *Califano v. Sanders*, 430 U.S. 99, 104-07 (1977).

[2] The parties have not addressed whether the SSA's issuance of the September 21, 2018, Notice of Change in Benefits supersedes the earlier March 30, 2017, Notice of Change in Benefits, rendering Plaintiff's pending Request for Reconsideration of the earlier decision moot. This issue, among others, should be addressed first at the agency level, to permit this Court to have a single final decision for appellate review.

in the Act, and its meaning is left, instead, "to the [Commissioner] to flesh out by regulation." *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975). Social Security regulations provide that a claimant must complete a four-step administrative review process to obtain a judicially reviewable final decision. 20 C.F.R. § 404.900(a). First, an individual claiming entitlement to benefits receives an initial determination. 20 C.F.R. § 404.902. If the claimant is not satisfied with the determination, the claimant may request the SSA to reconsider the decision. 20 C.F.R. § 404.907. After the second step, reconsideration, if the claimant is still not satisfied with the determination, the claimant may request a hearing before an Administrative Law Judge ("ALJ"). *Id.*; 20 C.F.R. § 404.929. The claimant must request a hearing within sixty (60) days after the claimant receives notice of the previous determination or decision, unless the Commissioner grants a written request for more time. 20 C.F.R. § 404.933(b). Finally, if the claimant is not satisfied with the ALJ's determination at the third step of the review, the claimant may request review by the Appeals Council ("AC"). 20 C.F.R. § 404.967. The AC may deny the request for review and allow the ALJ's decision to stand as the final decision of the Commissioner, or it may grant the request for review and issue its own decision. 20 C.F.R. § 404.981. In either event, the claimant may then seek judicial review of the Commissioner's final decision by filing an action in federal district court within sixty (60) days after receiving notice of the AC's action, unless the Commissioner grants a written request for more time. 20 C.F.R. §§ 404.981, 404.982, 422.210. If the claimant does not pursue administrative appeal rights, or does not do so within the time limits set out in the regulations, the administrative determination or decision becomes binding. 20 C.F.R. §§ 404.905, 404.921, 404.955, 404.981.

In this case, Plaintiff has completed only one and one-half of the steps in the four-step administrative review process. Plaintiff obtained two initial decisions, on March 30, 2017, and

September 21, 2018. In the first instance, Plaintiff filed a Request for Reconsideration, but has not yet received a response. Plaintiff's frustration with the length of time the administrative process can take is shared by many. This Court takes judicial notice of the extensive backlogs and delays plaguing the SSA, which is the administrative agency charged with providing subsistence and benefits to disabled and retired citizens. Fed. R. Evid. 201; *see, e.g.*, Mark Miller, *Have a Social Security Question? Please Hold*, N.Y. Times, Nov. 21, 2018 (noting "long delays in hearings on disability insurance appeals and in resolving benefit errors" and that the "average wait time for a hearing decision on an appeal in fiscal 2018 was 591 days"). As the reporter noted, the "[s]low processing of paperwork can keep beneficiaries in limbo for months, or even years, waiting for mistakes to be corrected." *Id.* Along with the lengthy delays common to all parties attempting to have claims considered at the agency level, Plaintiff has experienced the additional frustration associated with receiving inconsistent and sometimes factually erroneous communications from different SSA employees. However, without pursuing the remaining steps of the administrative process, including reconsideration, the ALJ hearing and decision, and review by the AC, Plaintiff has not afforded SSA "an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise and to compile a record which is adequate for judicial review." *Fitzgerald v. Schweiker,* 538 F. Supp. 992, 998 (D. Md. 1982) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)). Thus, Plaintiff has not exhausted her available administrative remedies.

In addition to her unsuccessful argument that she has obtained the equivalent of a "final decision," Plaintiff also contends that this Court should waive the exhaustion requirement. As background, the Supreme Court has interpreted the finality requirement of the Social Security Act, 42 U.S.C. § 405(g), to contain two elements: (1) "that a claim for benefits shall have been

7

presented to the [SSA]," and (2) "that the administrative remedies prescribed by the [SSA] be exhausted." *Mathews v. Eldridge,* 424 U.S. 319, 328 (1976). The Supreme Court has determined that the first element, presentment, cannot be waived, but the second element, exhaustion, can be waivable under certain conditions. *Id.* at 329-30. Because exhaustion is intended to prevent "premature interference with agency processes," *Weinberger*, 422 U.S. at 765, the circumstances warranting judicial waiver of the exhaustion requirement are narrow.

Plaintiff cites five waiver cases, which collectively elucidate the standards for waiver but are readily distinguishable from the situation presented here. In the earliest case, *Weinberger,* the Supreme Court considered a claim by a group of named appellees, on behalf of a class, challenging the constitutionality of the provision of the Social Security Act prohibiting the widow or stepchild of a wage earner from receiving insurance benefits unless his or her relationship with the wage earner commenced more than nine months before the wage earner's death. 422 U.S. 749. The Supreme Court concluded that the unnamed members of the class had not presented their claims to the SSA, and thus they could not establish jurisdiction. *Id.* at 764. As for the named appellees, the Supreme Court noted that they had only received an initial denial and a denial on reconsideration, and had not yet had a hearing before an ALJ or consideration by the AC. *Id.* at 764-65. However, the Supreme Court concluded that the purposes of permitting the SSA "an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review" have been satisfied where, as in *Weinberger,* "the Secretary has satisfied himself that the only issue is the constitutionality of a statutory requirement, a matter which is beyond his jurisdiction to determine." *Id.* The *Weinberger* Court noted, "In the present case the Secretary does not raise any challenge to the sufficiency of the allegations of exhaustion in appellees' complaint. We

8

interpret this to be a determination by him that for the purposes of this litigation the reconsideration determination is 'final.'" *Id.* at 767.

In contrast, in the instant case, Plaintiff does not challenge the constitutionality of any express statute, regulation, or policy, but instead contends that the SSA did not properly apply its own regulations in evaluating Plaintiff's claim. Plaintiff asserts that the Commissioner "is unlikely to change the current policy of disallowing 'file and suspend' even for pre-April 30, 2016 applications for spousal benefits despite the policy she announced at the time Congress amended the provision." ECF 13 at 12. Plaintiff's complaint, however, does not allege the existence of an agency "policy" to disallow benefits to pre-April 30, 2016 applicants, but simply alleges that the SSA erroneously decided Plaintiff's claim under the governing policies. *See* ECF 1 ¶ 13 ("Therefore, the Notice misapplied SSA's own regulation."); *id.* ¶ 14 ("Therefore, SSA violated the [Bipartisan Budget Act of 2015] when it applied the amendments retroactively to [Plaintiff].") The issue of whether SSA appropriately applied the governing statute and duly enacted regulations to the facts presented by Plaintiff's claim is well within the jurisdiction of the SSA to decide. In addition, unlike in *Weinberger,* the Commissioner has expressly challenged Plaintiff's failure to exhaust administrative remedies, and does not concede the finality of the initial decisions made by agency representatives.

In the second case Plaintiff cites, *Eldridge,* 424 U.S. 319, the claimant, Eldridge, argued that the SSA's policy to terminate Social Security benefits before holding a pre-termination hearing was unconstitutional. *Id.* at 324-25. Eldridge's benefits had been terminated, and he received a notice of his right to seek reconsideration. *Id.* Instead of seeking reconsideration, Eldridge filed suit in federal court. *Id.* The Supreme Court concluded that Eldridge had fulfilled the "presentment" requirement by filling out a State agency questionnaire regarding his

continuing disability and responding to the notice that first "proposed" terminating his benefits. *Id.* at 329. The Supreme Court also held that waiver of the exhaustion requirement was appropriate. *Id.* at 330-31. The Supreme Court rested its decision on several factors: (1) the plaintiff's constitutional due process challenge to the SSA's procedure was collateral to his claim of entitlement to benefits; and (2) full relief could not be obtained through an administrative hearing, which could result in his benefits being reinstated but could not address his constitutional argument. *Id.* at 330-32. In contrast, in this case, Plaintiff's claim is not collateral to her claim for entitlement to spousal benefits from 2012-2016, and full relief could be obtained if SSA were to reverse its position on the alleged overpayment.

In the third case cited by Plaintiff, *Fitzgerald,* plaintiff Fitzgerald filed a class action lawsuit challenging the SSA's Regional Transmittal No. 417, which provided the formula to calculate retroactive Supplemental Security Income benefits for recipients who also received benefits under the Maryland Aid to Families with Dependent Children program. 538 F. Supp. 992. While Fitzgerald's federal suit was pending, an ALJ at SSA issued an opinion adjusting the calculation of her benefits in a favorable manner, rendering her claim moot. *Id.* at 995. The Court permitted other plaintiffs to intervene as party plaintiffs, but the new plaintiffs had not exhausted their administrative remedies, and the SSA had not voluntarily waived exhaustion. *Id.* at 995-96. The *Fitzgerald* Court found that *Eldridge* had "explicitly approved a highly practical and result-oriented approach as the proper way to analyze" the waiver question. *Id.* at 997. Specifically, the *Eldridge* Court had stated, "But the core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered remains applicable." *Eldridge*, 424 U.S. at 331 n.11. Applying those tenets, the *Fitzgerald* court found that the *Eldridge* doctrine

permitting waiver of exhaustion applied not only to constitutional challenges, but also in cases like Fitzgerald's involving statutory claims. *Id.* at 997-998. Ultimately, the *Fitzgerald* Court balanced the claimants' "interest in the prompt resolution of an issue against the general principle that an agency's procedures should be permitted to run their course." *Id.* at 997. Given the "claimants' poverty and resulting dependence upon the benefits" and the likelihood that some claimants would lack the knowledge or energy to appeal what appeared to be a favorable decision granting benefits, the Court concluded that there was a "significant interest in prompt resolution of the class' [sic] claim that the Secretary's method of computation is improper." *Id.* at 998. On the other side of the balancing equation, the *Fitzgerald* Court found that exhaustion would be insignificant because it would be unrealistic "to expect that the Social Security Administration would consider changing its procedure as a result of a challenge from a single claimant" and because the communications from the SSA in the litigation expressed clearly that the agency did not intend to alter its calculation of benefits "in the absence of legislative direction or a court order." *Id.* at 998.

As noted above, the instant case is distinguishable from *Fitzgerald*, because it does not implicate a procedure that has been alleged to affect a large number of claimants, and the SSA has made no evident policy pronouncement that would suggest that Plaintiff's administrative appeals would be fruitless. Instead, Plaintiff has amassed a series of independent and sometimes inconsistent communications from SSA representatives, which simply cannot be viewed as a consistent expression of a policy position. Accordingly, applying the *Fitzgerald* balancing test to this case, the general principle of allowing the agency's procedures to run their course outweigh the claimant's interest in the prompt resolution of this issue relating solely to her claim for benefits.

Fourth, Plaintiff cited *Grice v. Colvin*, 97 F. Supp. 3d 684 (D. Md. 2015), in which the Court considered constitutional challenges brought by multiple plaintiffs against regulations promulgated by the SSA in October, 2011, allowing referral of "overpayments to the Department of the Treasury for offset against Federal tax refunds regardless of the length of time the debts have been outstanding." 97 F. Supp. 3d at 689 (quoting 20 C.F.R. § 404.520(b)). The challenged regulations replaced a prior version which had limited such referrals to a period of ten years after the overpayment first accrued. 20 C.F.R. §404.520(b) (2011). *Grice* was filed by four plaintiffs whose federal tax refunds had been intercepted by the SSA, using the Treasury Offset Program. 97 F. Supp. 3d at 691. One of the plaintiffs was found not to have satisfied the presentment requirement. *Id.* at 701-02. The remaining three plaintiffs were deemed to have satisfied presentment, although their cases had not progressed to an ALJ hearing. *Id.* at 702. In finding waiver of the procedural exhaustion requirement to be appropriate, the *Grice* Court focused heavily on the fact that plaintiffs had not received notice of the overpayment and did not have an opportunity to challenge the interception of the refunds, since the notices were sent to invalid addresses more than ten years old. *Id.* at 702-03. Moreover, plaintiffs' attempts to challenge the overpayment decision through the four-step administrative process were rebuffed, and they were told "either that reconsideration was *not* an option or that waiver [of the overpayment] was the *only* option." *Id.* at 703 (emphasis in original). Thus, SSA itself did not permit complete exhaustion. *Id.* at 703-04 ("It would be difficult to find a better case for waiving exhaustion then one where the SSA did not permit exhaustion in the first place."). Finally, the *Grice* Court noted that granting waiver of plaintiffs' overpayment would not allow plaintiffs to challenge the legality of the overpayment procedure. *Id.* at 704. As the Court stated, "Plaintiffs' claims are not challenges to individual procedures taken against one claimant.

Rather than challenging an individual overpayment assessment, Plaintiffs challenge the SSA's systematic approach to the collection of overpayments as a violation of constitutional and statutory law. In that way, Plaintiffs' claims are collateral to any individual determination of an overpayment or any personal objection to the overpayment decision." *Id.* at 705.

Again, the *Grice* case is readily distinguishable from Plaintiff's. Plaintiff has not mounted a constitutional or statutory challenge to any particular regulation, law, policy, or procedure, and her case amounts to a challenge to the individual procedures applied in her case. She received timely notice of the agency decisions, was invited to file for reconsideration of the agency decision, ECF 1, Atts. 8 and 14, filed for reconsideration once, but declined to do so a second time. Thus, the elements favoring waiver in *Grice* are simply inapposite in this case.

Finally, Plaintiff cites *Bowen v. New York*, 476 U.S. 467, 482 (1986), for the proposition that she could not have sought an administrative hearing because the Commissioner had failed to act on her petition for reconsideration, and, thus, that she could not exercise a right that she did not know existed. ECF 13 at 12. As noted above, however, there has been no indication that the SSA would not issue any ruling on Plaintiff's petition for reconsideration (unless it has now been mooted by the new Notice of Change in Benefits). The agency's processes, as noted above, are heavily burdened and do not progress in a timely fashion. Plaintiff would not be advised of her right to a hearing until and unless the first two steps of the administrative process were decided adversely to her claims.

Accordingly, due to Plaintiff's failure to exhaust administrative remedies, this Court lacks jurisdiction to review her claims. Moreover, the Court has no basis to retain jurisdiction in this matter, or to dictate a timeline for the agency's resolution of this case. Thus, acknowledging

Plaintiff's frustration with a system that cannot process claims in a prompt manner, her case must be dismissed.

IV. **CONCLUSION**

For the foregoing reasons, the SSA's Motion to Dismiss, ECF 9, is GRANTED, and the Clerk is directed to CLOSE this case. A separate order follows.

Dated: April 10, 2019

/s/
Stephanie A. Gallagher
United States Magistrate Judge